# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 25, 2012

## STATE OF TENNESSEE v. BRENDA WHITESIDES

**Direct Appeal from the Circuit Court for Cocke County**
**No. 2090   Ben W. Hooper, II, Judge**

_____

**No. E2011-02317-CCA-R3-CD - Filed May 25, 2012**

_____

The Defendant, Brenda Whitesides, pled guilty to violating the habitual motor vehicle offender law, driving on a revoked license, and violation of the financial responsibility law. The trial court merged the Defendant's convictions for driving on a revoked license and violating the habitual motor vehicle offender law and then sentenced her to five years of probation. The Defendant's probation officer filed a probation violation warrant that alleged that she had violated the terms of her probation by failing to report and by moving out of the State. After a hearing, the trial court revoked the Defendant's probation and ordered that she serve her sentence in confinement. On appeal, the Defendant contends that the trial court improperly based its revocation finding on considerations that were not presented by the warrant or supported by the facts adduced at the hearing. After reviewing the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, Jr., J., joined. JERRY L. SMITH, J., not participating.

Keith E. Haas, Newport, Tennessee, for the appellant, Brenda Whitesides.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James Dunn, District Attorney General; and Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Background

On May 10, 2011, the Defendant pled guilty to violating the habitual motor vehicle offender law, driving on a revoked license, and violation of the financial responsibility law. The transcript of the hearing during which she entered her plea is not included in the record. We, therefore, cannot summarize the facts supporting her guilty plea. Her judgments of conviction, however, reflect that the trial court merged the driving on a revoked license conviction with her conviction for violating the habitual motor vehicle offender law and then sentenced her to five years of supervised probation.

On August 24, 2011, the Defendant's probation officer filed a probation violation report in which she alleged that the Defendant had violated her probation by committing the following: changing her residence without notifying her probation officer, living out of state, not reporting to the probation office 72 hours after being sentenced, and failing to report on May 24, 2011 and in June 2011. The warrant alleged the following facts:

> The offender reported to probation that she lived in Sevierville, TN and does not. A home check was conducted on 08-23-11, which confirmed the offender did not live . . . at the residence she reported on her report forms for probation. On or about 08-22-11 @1200, Officer Rebecca Cowan pulled over the offender's husband. It was stated to Officer Cowan that the offender and her husband are just in Sevier County for a DHS appointment and that they live in North Carolina. In the possession of the offender's husband was her prescription bottle for []oxycodone that was filled 3 days prior and was empty when Officer Cowan pulled him over.
>
> . . . The offender was instructed to report to the probation office 72 hours after being sentenced in court, [and] she failed to do so. The offender also missed her appointment that was scheduled for May 24, 2011. The offender finally showed up on May 25, 2011 for her appointment and at that time was instructed to report back on June 1, 2011. The offender failed to report again for the month of June 2011.

The trial court issued a warrant and, after the Defendant's arrest, the trial court held a hearing on the alleged probation violations.

At the hearing, the following evidence was presented: The probation officer, Jennifer Ramsey, testified that the Defendant had failed to report several times while she was under supervision in Cocke County, so Officer Ramsey sent the Defendant a letter to allow her to transfer her supervision to Sevier County. The Defendant failed to report for that appointment, and her transfer was denied. Cocke County submitted another transfer letter, and the Defendant appeared. The transfer of the Defendant's probation supervision from

-2-

Cocke County to Sevier County was granted on July 18, 2011. Officer Ramsey said that on August 22, 2011, the Defendant was at the DHS office in Sevier County for an appointment about her food stamps. While the Defendant was in the meeting, the Defendant's husband was stopped by police officers. The probation officer offered a printout given to her by the Defendant on September 2, 2011, that showed that the Defendant had filled a prescription for Oxycotin on August 22, 2011, only a few days before her husband was stopped. The bottle was empty at the time the Defendant's husband was stopped by police.

Officer Ramsey testified that two other officers went to the Defendant's listed address on August 23, 2011, and they discovered she was not living at that address. The Defendant had not given Officer Ramsey notice that she had moved or provided her an alternate address. The officer said she was still, at the time of the hearing, unaware of the Defendant's permanent address.

Officer Ramsey said the Defendant had failed to report four times since May 2011, when she was sentenced, and that the Defendant had not offered any excuses for her failure to report.

Officer Ramsey testified that, after the Defendant was sentenced to probation, she reported to the Cocke County probation office and asked for a transfer to Sevier County. On June 7, 2011, Officer Ramsey sent a letter about the transfer to the Defendant at the Defendant's listed address. The letter was never returned to her, but, when the Defendant failed to report, Officer Ramsey denied the Defendant's transfer request. When the Defendant reported for her next scheduled appointment on July 18, 2011, and again asked for a transfer, Officer Ramsey granted her request.

The Defendant reported as scheduled on August 11, 2011, and Officer Ramsey set her next appointment for September 23, 2011 at 11:00 a.m. On August 22, Officer Cowan called Officer Ramsey about stopping the Defendant's husband. When Officer Ramsey could not reach the Defendant by telephone because the Defendant's phone was disconnected, she sent the Defendant a letter asking her to come in to the office before her next appointment. The police officer conducted a home visit and discovered the Defendant was not living at the address she had provided to Officer Ramsey. When she could not reach the Defendant by letter, she filed the warrant at issue in this case on September 1, 2011.

Based upon this evidence, the trial court stated:

Okay. Every now and then the Court is looking at something that really, really raises a red flag. Since 1983, Ms. Whitesides, you have been in court at least once or multiple times every year except when you were in the penitentiary.

Your criminal history is six pages long. You have numerous parole/probation violations. Sevier County, there's two on this page, plus a one year felony escape charge. Your charges are overwhelmingly drinking related, driving related. Here is where you got three year[s] . . . out of criminal court of Knox County from operating a motor vehicle. I've never seen it framed in those words, but here you were an absconder from community corrections. That of course was revoked. You were resentenced to four years. Here's another HMVO felony, and that's what you're doing here today I believe, isn't it, HMVO primarily?

. . . .

Right. Here's another 1999 two year sentence for HMVO violation. Three year sentence for introduction of contraband in Sevier County jail. Forgery in 2002 at 45 percent, which of course means that you are a persistent offender.

. . . .

You've been – well, I couldn't begin to tell you how many violations and misdemeanors that you have, but a bunch of them.

At that point, the Defendant asked to addressed the trial court and stated:

I haven't been in trouble since like 2004 except a violation that I got from 2004 that I had to do in 2007 or 2008, but that was something that happened, you know, in 2004 and I haven't been in trouble since then. And my escape charge that you were talking about was when my mom passed away. I didn't escape. I was let free to go to the hospital with her. I mean, I haven't been in trouble. I mean, I did one time driving and I was driving from work.

The trial court responded:

Well, in late 2003 you've got a four year sentence, TDOC at 45 percent. In December of 2003 you were charged with violation of probation then and – but reinstated on the basis of amount of time served, but then in 2005 your parole was revoked, so you did get into trouble since 2004.

The Defendant stated:

-4-

The reason it was revoked I had three months left on parole and I didn't realize that I had still had that much time left. We just had a misunderstanding, but by the time that I got in front of the parole hearing my time was up and I was released.

The trial court stated:

But your record shows otherwise. . . . [I]n 2007, August, you were charged with theft under five hundred dollars as well as possession of drug paraphernalia, given 11/29 on each one of them. That's since 2004. And then January the 5th of 2008 you were sentenced 120 days in jail for violation of probation. Then in June of 2008 in Knox County you were given 11/29 on two charges. Well, one you got in June for theft under five hundred and then in August another one, and then you got here, so you have been in trouble, ma'am. I don't understand how you could have gotten all of that.

. . . .

Now, at your age, and you're a young person, ma'am, but you've got a serious problem. Anybody that has made no more progress in rehabilitating themselves since at least 1984 and has amassed a six page criminal history reached a 45 percent persistent offender status needs some help. Now, I'm going to give you some help. I'm going to let you – I find you to be in violation for not reporting – and based upon what this record reflects, and you're going to execute this sentence. Now, this is going to give you an opportunity, ma'am, to get on the right track. You don't like what I've just said, you don't like me for what I've just said, and that's perfectly okay. I would dare venture to say that you may come back to see me one of these days and say, Thank you, Judge. It ain't in you now and I don't expect you to say that today. But I – you know, to turn you loose or give you a pat on the back and say, well, you failed to report; you see, that's what the problem is, you must report. That's the only way the system works. So that's the judgment of the Court. You'll be required to execute this sentence.

The trial court stated that he considered the Defendant's criminal record and the fact that she "stood there under oath and told [him] things that were not true" as an indication that she was "just not ready to get with the program." It is from this judgment the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the warrant is invalid because it was sworn out by an officer who was not the affiant. The Defendant further contends that the proof at the hearing did not support that the Defendant was not living at her listed address. Further, the proof, she asserts, did not show that she failed to report to her probation appointments. Finally, she asserts that the trial court improperly considered her prior criminal history when revoking her probation. The State counters that there is ample evidence in the record to support the trial court's findings. We agree with the State.

In Tennessee, the procedure for revocation of probation is covered in Tennessee Code Annotated section 40-35-311. The statute provides as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

T.C.A. § 40-35-311(a) (2010).

The essential question facing the trial court in a probation revocation proceeding is whether the court's determination will subserve the ends of justice and the best interest of both the public and the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T .C.A. § 40-35-311(e) (2010). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2010). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2) (2010). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in

confinement). Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-35-310(a) (2010).

Because Tennessee law permits the trial court to revoke probation only upon finding, by preponderance of the evidence, that the defendant has violated the terms of his or her probation, this Court will not disturb the trial court's determination absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011), *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). A finding of abuse of discretion "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the case presently before us, the Defendant first contends that the warrant was invalid. She failed to present this argument before the trial court below and failed to offer any proof to support this argument. Further, she failed to cite any legal authority for the proposition that having the wrong affiant sign the warrant makes the warrant invalid. Therefore, we deem this issue waived. *See* Tenn. R. Crim. P. 10(b); Tenn. R. Crim. P. 12(b)(2), (f) (issues presented for the first time on appeal are considered waived).

We further conclude that the trial court did not abuse its discretion when the trial court found by a preponderance of the evidence that the Defendant had violated her probation. Importantly, it is not permissible for a trial court to revoke probation based on criminal acts known at the time the probation was originally granted. *State v. Marcus Nigel Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *4-5 (Tenn. Crim. App., at Knoxville, Oct. 23, 2008), (citing *State v. Shannon Lee Beckner*, No. 923, 1991 WL 43545, at *5 (Tenn. Crim. App., at Knoxville, Apr. 2, 1991), *no Tenn. R. App. P. 11 application filed* and *State v. Beard*, 189 S.W.3d 730, 737 (Tenn. Crim. App. 2005)), *no Tenn. R. App. P. 11 application filed*. In the record before us, the trial court discussed with the Defendant her previous criminal history and her need for help. The vast majority of that discussion occurred after the Defendant asserted to the trial court that she had not been in trouble since 2004, and the trial court explained how her record refuted her statement.

Ultimately, when revoking the Defendant's probation, the trial court then stated, "I find you to be in violation for not reporting." The trial court did not abuse its discretion when making this finding. The Defendant's probation officer testified that the Defendant had missed four appointments. She said the Defendant offered no excuse for her failure to report. Further, the probation officer testified that, based upon the Defendant's failure to

report, she had denied the Defendant's first transfer request. This evidence sufficiently supports the trial court's findings. The Defendant is not entitled to relief on this issue.

### III.  Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE