IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

**STATE OF TENNESSEE v. TARELL D. LEWIS**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2016-A-60, 2016-A-61, 2016-B-593    Steve Dozier, Judge**

_____

**No. M2016-02513-CCA-R3-CD**
_____

The defendant, Tarell D. Lewis, appeals his Davidson County Criminal Court guilty-pleaded convictions of two counts of the sale of heroin, one count of the possession with intent to sell heroin, and one count of being a felon in possession of a firearm, claiming that the trial court erred by ordering a fully-incarcerative sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

David Von Wiegandt, Nashville, Tennessee, for the defendant, Tarell D. Lewis.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Edward Ryan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Davidson County Grand Jury charged the defendant in case number 2016-A-60 with one count of the sale of heroin; in case number 2016-A-61 with one count of the sale of heroin; and in case number 2016-B-593 with one count of the possession with intent to sell cocaine, one count of the possession with intent to sell heroin, one count of simple possession or casual exchange of marijuana, one count of being a felon in possession of a firearm, and one count of employing a firearm during the commission of a dangerous felony having previously been convicted of a dangerous felony. Pursuant to a plea agreement with the State, the defendant agreed to plead guilty to the sale of heroin as charged in case numbers 2016-A-60 and 2016-A-61 and to the possession with intent to sell heroin and being a felon in possession of a firearm as

charged in case number 2016-B-593 in exchange for a total effective sentence of 10 years, with the manner of service of the sentence to be determined by the trial court, and the dismissal of the remaining charges in case number 2016-B-593.

According to the recitation of facts provided by the State during the guilty plea submission hearing, the charges in case numbers 2016-A-60 and -61 related to the controlled purchase of drugs by a confidential informant. Case number 2016-A-60 related to the August 13, 2015 controlled purchase of half a gram of heroin from the defendant. Case number 2016-A-61 related to the September 9, 2015 controlled purchase of one gram of heroin from the defendant. With regard to case number 2016-B-593, the State proffered:

> On November 4th, of 2015[,] approximately 9:20, officers received information from a subject about two male blacks that entered a residence to collect money that was from the s[ale] of drugs and entered the residence with a firearm. A BOLO was put out for an orange Chevrolet with the driver's side window covered with plastic. It possibly could be in the Chatham Place Housing Project.
>
> Officers Justin Fox and Joshua Day went to the area and observed a vehicle fitting that description. The officers approached and the occupants made some movements in the car like they were trying to conceal something. Officers observed a Smith and Wesson .9 millimeter handgun beside [the defendant] in the back right passenger [seat] along with a full[y] loaded magazine, a box of ammunition. There was also a clear plastic bag of three-grams of crack cocaine, .6 grams of heroin[] located in the car all next to [the defendant's] foot in plain view.

At the December 1, 2016 sentencing hearing, Riley Clements testified that he had known the defendant "since he was a little thing" and that the defendant had worked for Mr. Clements' construction company "several times." He said that the defendant had worked "off and on" over the course of "three or four years." Mr. Clements described the defendant as "[a] very good worker" and insisted that the defendant could "come do work immediately" at a rate of "$15 an hour" if granted a sentence involving release into the community.

Shantika Howard testified that the defendant was the father of her 10-month-old daughter. The defendant also shared an older daughter with another woman.

Ms. Howard said that the defendant cared for his other daughter "all of the time when she was little," that he had taken the little girl to doctors' appointments, and that "he was the provider of all of that for her." Ms. Howard said that the defendant had been incarcerated since "a couple of months before [their daughter] was born" and that the defendant's continued incarceration was "hard" on her "being a single parent." She testified that the defendant used marijuana "[s]eems like every day" before his incarceration and that she believed he would benefit from drug treatment.

Ms. Howard testified that the defendant was "planning to stay with his auntie" should he be released. She said that the aunt "wasn't able to get out" because "[s]he's been real sick and stuff lately." Ms. Howard described her relationship with the defendant's aunt as good. Ms. Howard said that the defendant had expressed remorse for his actions as well as a desire to "start over" and "help out with his family."

During cross-examination, Ms. Howard insisted that the defendant did not smoke marijuana inside the house. She also said that the defendant had tried unsuccessfully to quit using drugs.

The defendant made an unsworn allocution expressing his remorse and his desire for a fresh start.

At the conclusion of the hearing, the trial court took the case under advisement. In a written sentencing order, the trial court ordered the defendant to serve the entire 10-year sentence in confinement. The court noted with particularity the defendant's "criminal record, which includes four felony convictions, and his inability to comply with alternative release, which includes at least two probation violations," and concluded that the defendant was "not an appropriate candidate for alternative release." The court also concluded that confinement was "necessary to avoid depreciating the seriousness of these Schedule I drug offenses and that measures less restrictive than confinement have recently been applied unsuccessfully to the defendant."

In this timely appeal, the defendant challenges the trial court's denial of alternative sentencing, arguing that the trial court abused its discretion by refusing to grant him a community corrections placement pursuant to the "special needs" provision of Code section 40-36-106(c). The State asserts that the defendant was not eligible for community corrections placement under the general provision because he was convicted of being a felon in possession of a firearm, *see* T.C.A. § 40-36-106(a)(1)(D), and that the record does not support a conclusion that he was eligible for community corrections placement pursuant to the "special needs" provision of Code section 40-36-106, *see* T.C.A. § 40-36-106(c). The State avers that the trial court properly ordered a sentence of total confinement.

-3-

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709. The supreme court expanded the holding in *Bise* to the trial court's decision regarding probation eligibility, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The imposition of a 10-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a), (b). Traditionally, the defendant has born the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "'subserve the ends of justice and the best interest[s] of both the public and the defendant.'" *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

To be eligible for community corrections placement, an offender must "meet[] all of the following minimum criteria":

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
(F) Persons who do not demonstrate a pattern of committing violent offenses.

T.C.A. § 40-36-106(a)(1). Even where an offender does not meet the above criteria, he or she may nevertheless "be considered eligible for punishment in the community under this chapter" if the offender "would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution." *Id.* § 40-36-106(c).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

The 35-year-old defendant's criminal record spanned the entirety of his adult life, beginning with a conviction for possession of cocaine, and included three felony drug convictions and a 2005 federal conviction for being a felon in possession of a firearm that garnered the defendant a sentence of 57 months' incarceration. After several years without a conviction, the defendant was convicted of drug possession and evading

-5-

arrest in 2014. Sentences of community corrections and probation were revoked in 2002, and the defendant was on the heels of a probationary sentence imposed in May 2014 when he committed the offenses at issue in this appeal. The record also evinced a spotty employment history, despite Mr. Clements' testimony that the defendant had worked for him "off and on." The record supports the trial court's conclusion that confinement was necessary in this case to avoid depreciating the serious nature of the defendant's convictions, including the repeated sale of heroin, a Schedule I substance, and the defendant's continuing to possess a firearm despite having been previously convicted of several felonies. Finally, nothing in the record suggests that the defendant should have been placed on community corrections pursuant to the "special needs" provision of the governing statute. Other than the testimony of the mother of the defendant's child and the defendant's statement in the presentence report, no evidence indicated that the defendant had a history of "chronic alcohol or drug abuse or mental health problems." Under these circumstances, the record supports the sentencing decision of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE